UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

**TODD BONDS**            **PLAINTIFF**

v.            **CIVIL ACTION NO. 1:16-CV-P16-GNS**

**TODD COUNTY DETENTION CENTER et al.**            **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Todd Bonds, filed a *pro se*, *in forma pauperis* complaint. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons set forth below, the action will be dismissed in part and allowed to proceed in part.

**I. SUMMARY OF CLAIMS**

Plaintiff is a convicted state inmate who at the time pertinent to the complaint was incarcerated at the Todd County Detention Center (TCDC).[1] He names as Defendants the TCDC; the Kentucky Department of Corrections (KDOC); and, in their official and individual capacities, the following TCDC employees: Jailer Greg Allen, Captain Fowler, Sgt. Betsy Walker, and Deputy Kliner. In his original complaint, Plaintiff alleges that on January 21, 2016, while he was an inmate at the Campbell County Detention Center, he was "sold" to TCDC and transported there. He states that because he is diabetic and has high blood pressure he wrote a letter to Defendant Allen asking that he be transferred to a facility that had 24-hour nursing, but Defendant Allen never responded. Plaintiff alleges that although his release date was only months away, he was placed in a cell with inmates serving long sentences. He also states that he

---

[1] Plaintiff filed a complaint on his own paper and on the Court's form for filing a 42 U.S.C. § 1983 complaint. The Court has considered both in this initial screening.

feared being charged with smoking, which would have added two years onto his one-year sentence, because his cellmates smoked every day.

Plaintiff alleges that he "was about to be attacked by several inmates for voicing his displeasure with smoking around him." He states that on January 27, 2016, Defendant Fowler and Kliner came to his cell door and Plaintiff asked to be removed from the cell because he feared for his safety. Defendants refused to remove him from the cell, and after Defendants left, the other inmates "became louder and one shouted, 'They threw him to the wolves. I told y'all she said we could get him.'" Plaintiff states that he summoned Defendants Fowler and Kliner back, and that those Defendants eventually made Plaintiff state, in the presence of the other 14 inmates, who was making the threats. Plaintiff alleges that this endangered him both inside TCDC and "on the street."

Plaintiff next alleges that he was taken to an isolation cell "while being taunted by" Defendants Fowler and Kliner, which made him feel unsafe. He states that he feared that TCDC employees would try to harm him. He states that Defendants Fowler, Kliner, and Walker each came into his cell, two at a time to "taunt" him and force him to sign paperwork. He states that when he started to add an explanation of why he was signing the paper, Defendant Fowler snatched it from his hands, stating, "'Don't f\*\*king put my name in it." According to Plaintiff, this incident should be caught on tape. Plaintiff does not explain what the paperwork concerned.

Plaintiff alleges that Defendants Fowler, Walker, and Kliner continued to taunt and bully him throughout their shift and that he became ill with stomach and chest pains and high blood pressure. He was taken to the hospital where he asked a hospital tech to get him help because he feared that TCDC guards would have him killed.

Plaintiff alleges that when he was returned to TCDC Defendant Allen came into his room with a tape recorder and asked Plaintiff what happened.  According to Plaintiff, during that conversation Defendant Allen admitted that Defendants Fowler, Kliner, and Walker did not follow policy when they did not immediately remove Plaintiff from the threat of danger.  Plaintiff states that he filed an Open Records Request for a copy of the audio and all documentation that he had signed, but the request was ignored.

Plaintiff states that on February 1, 2016, Defendant Fowler again taunted Plaintiff, for which Plaintiff states that he filed a grievance which was not answered.  Plaintiff states that he began signing each document when receiving medication that "'Cpt. Fowler tried to kill [me] pm 1/27/16.'"  He states that he was "chided" for this activity.

In his original complaint, Plaintiff lists the following counts:  1) human trafficking by Defendants TCDC, Allen, and DOC; 2) obstructing justice by Defendants Allen and TCDC; 3) intimidating a witness by Defendants DOC, Fowler, Walker, and Kliner; 4) destruction of open records by Defendants TCDC, Allen, Fowler, Walker, and Kliner; 5) tampering with evidence against Defendants TCDC, Allen, Fowler, Walker, and Kliner; 6) intent to subvert Open Records Act by Defendants TCDC and Allen; 7) civil rights violations by all Defendants, and 8) violation of the Americans with Disabilities Act (ADA) by Defendants Allen, DOC, and TCDC.

In his complaint on the § 1983 form, Plaintiff alleges that his "rights to Equal Protection and civil rights" were violated by Defendants Walker and Fowler.  He alleges that Defendant Allen violated his "rights to pursue open records and was negligent in providing for allowing for proper medical care, all while encouraging the continued harassment, retaliation and humiliation" of him.  He further alleges that, in January and February 2016, Defendants Walker

and Fowler falsely told other inmates that Plaintiff was an informant regarding the importation of tobacco into the jail. He states that on January 27, 2016, while Plaintiff "lay suffering from high-blood pressure that reached stroke-like levels" Defendants Walker and Fowler harassed Plaintiff. Plaintiff explains that TCDC nurses only work from 7:00 am to 3:30 pm. He states that around 8:00 pm Defendants Walker and Fowler "continued to berate Plaintiff for not being involved in the tobacco importation and when Plaintiff complained of chest pains, [Defendant] Fowler wrote down false blood pressure results she took." Plaintiff also alleges that Defendant Fowler "tried to manipulate Plaintiff's signing of a public document with intimidation." The next day when a nurse arrived, she sent Plaintiff to the hospital for his high blood pressure.

Plaintiff asserts that, at the hospital,[2] he asked for help from the police because he believed that TCDC staff was trying to kill him. However, he alleges that Defendant Allen "intercepted the officer and took a recorded statement." According to Plaintiff, Defendant Allen did not want to transfer Plaintiff because Plaintiff is a state prisoner and, therefore, "made money for his jail."

Plaintiff further alleges that on February 4, 2016, Deputy Wakeman "rush[ed]" Plaintiff's meal and interrupted Plaintiff's prayer, and then told Plaintiff that if Plaintiff signed "another document" at TCDC "he would make sure I got 'f**ked up'." Plaintiff states that he became upset and fearful and his "blood pressure immediately rose to 230/190." He states he was again rushed to the hospital and then transferred to the medical center. He states that while he was there, a TCDC deputy told him that he was worried about Plaintiff because he knew that some of the other TCDC employees were racist and that "'Fowler and Walker destroyed those tapes the other night you got sick.'" Plaintiff further alleges that on February 6, 2016, Deputy Wakeman

---

[2] It is not clear how long Plaintiff was at the hospital. The complaint is clear that he was back at TCDC by February 4, 2016.

exacerbated Plaintiff's condition "by insisting that Plaintiff be secured to bed by hand and foot, not just foot." According to the complaint, a hospital nurse told Deputy Wakeman that it was not necessary, but Deputy Wakeman "was insistent and petulant about ignoring the request of the medical professional until she got a doctor to tell her to put in Plaintiff's medical orders to not secure Plaintiff by arm as it will only worsen his condition." Plaintiff also alleges that his seven-day stay in the hospital "probably would have lasted longer i[f] TCDC employees hadn't come on 2/9/16 and 2/10/16 and influenced Plaintiff's medical coverage because Plaintiff was 'costing the state and TCDC too much.'" He further alleges that "TCDC employees brandishing and making very apparent they had guns on their hips influenced the medical team at the Medical Center at Bowling Green to release a patient while Plaintiff's blood pressure was still relatively high."

As relief, Plaintiff requests compensatory and punitive damages and injunctive relief.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of*

*Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### A. *Human trafficking*

Plaintiff's allegations do not establish that he was a victim of human trafficking. Instead, his allegations demonstrate that he was simply transferred from one detention center to another. Indeed, "[t]ransfers between institutions . . . are made for a variety of reasons." *Meachum v. Fano*, 427 U.S. 215, 225 (1976). The transfer of an inmate from one prison to another lies within the discretion of prison administrators. *McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."). As a general matter, an inmate has no liberty interest in a particular classification, prison assignment, or transfer. *McKune*, 536 U.S. at 39; *Meachum*, 427 U.S. at 224. Therefore, Plaintiff's claim related to being transferred from one detention center to another will be dismissed.

### B. *Obstruction of justice*

Plaintiff alleges that Defendant Allen prevented Kentucky State Police officers from entering TCDC to take a criminal report on one of TCDC's employees. According to the complaint, Defendant Allen decided to handle the investigation himself rather than embarrass one of his "rogue employees."

"Obstruction of justice is a criminal charge that does not provide a private cause of action." *Marshall v. Green*, No. 3:10CV-224-H, 2010 WL 1959514, at *3 (W.D. Ky. May 17,

2010); *see also Hamilton v. Reed*, 29 F. App'x 202, 204 (6th Cir. 2002). Plaintiff's claim of obstruction of justice will be dismissed.

### C. Intimidating a witness

Plaintiff's allegations regarding intimidating a witness are that on January 27, 2016, Defendants Fowler, Walker, and Kliner failed to take him into isolation before making Plaintiff tell them who made threats on his life. Plaintiff alleges that these Defendants told Plaintiff that they would not leave the cell unless he told them a name.

Plaintiff is not alleging that a witness was intimidated; rather, that he was forced to disclose the name of a person who had threatened him in front of other inmates. The Court therefore considers this claim to be a constitutional claim for deliberate indifference to his safety. It will be addressed below, along with Plaintiff's other constitutional allegations.

### D. Open Records Act

Plaintiff alleges that he filed an Open Records Request for a copy of the audio and all documentation that he had signed, but the request was ignored. He asserts that Defendant Allen violated his right "to pursue open records." The Court assumes that Plaintiff is alleging a violation of the Kentucky Open Records Act. An alleged violation of this state law alone would not give rise to a § 1983 claim. To state a claim under § 1983, "[a] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States . . . ." *West v. Atkins*, 487 U.S. 42, 48 (1988). Because the Kentucky Open Records Act is a state law, a violation of that statute does not give rise to a § 1983 claim.

It is possible to allege a procedural due process claim involving the open records act. However, the Kentucky Open Records Act, Ky. Rev. Stat. § 61.870 *et seq.*, provides for an appeals process for requests that are denied. Under Ky. Rev. Stat. § 61.880(5)(b), an individual

who receives an unsatisfactory response to an open records request may appeal to the Attorney General. The individual may then appeal the Attorney General's decision in the circuit court of the county where the public records are maintained. Ky. Rev. Stat. § 61.882(1). Because Plaintiff has not alleged that he has availed himself of this state appellate procedure, he cannot state a procedural due process claim under § 1983. *Violett v. Cohron*, No. 1:15-CV-P142-GNS, 2016 WL 1421200, at *5 (W.D. Ky. Apr. 8, 2016). This claim will be dismissed.

### E. Tampering with evidence

Plaintiff allegations on this count are that there is a videotape made by a TCDC surveillance camera and Defendant Fowler's body camera of the encounter between Plaintiff and Defendants Fowler, Walker, and Kliner; however, Plaintiff alleges that that these tapes were not made available to Plaintiff "as per his open records request." Therefore, the Court considers this claim to be part of Plaintiff's claim related to the Open Records Act, which, as explained above, must be dismissed.

### F. ADA violations

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2). The Supreme Court has held that the term "public entity" includes state prisons. *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1988).

To make out a claim under the ADA, Plaintiff must allege that: (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, and (3) such exclusion, denial of benefits, or discrimination was because of a disability. 42 U.S.C. § 12132.

Assuming that Plaintiff's high blood pressure is a disability within the meaning of the ADA, Plaintiff does not allege that he was discriminated against or denied benefits because of a disability. Plaintiff alleges that he was harassed while suffering from high blood pressure; but he did not allege that he was harassed because of his high blood pressure. The Court will, therefore, dismiss this claim. *See Jones v. Martin*, No. 99-1255, 2000 WL 191807, at *1 (6th Cir. Feb. 7, 2000) (affirming dismissal of ADA claim where plaintiff failed to allege that defendants discriminated against him because of disability); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *Sandison v. Mich. High Sch. Athletic Ass'n*, 64 F.3d 1026, 1030, 1036 (6th Cir. 1995).

### G. *Civil-rights violations*

#### 1. *Equal protection*

Plaintiff alleges that his "rights to Equal Protection and civil rights" were violated by Defendants Walker and Fowler. Elsewhere, Plaintiff alleged that he was told by a TCDC deputy that some of the other TCDC employees were racist. This is the sum total of his allegations regarding equal protection. Plaintiff does not state what his race is or what race(s) Defendants are.

The Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. To sustain an equal-protection claim, Plaintiff must allege, in part, that a Defendant intentionally discriminated against him because he was a member of a protected class, *McCleskey v. Kemp,* 481 U.S. 279,

9

292 (1987); *Purisch v. Tenn. Tech. Univ.,* 76 F.3d 1414, 1424 (6th Cir. 1996), or that he was treated differently than similarly situated individuals and that there is no rational basis for the difference in treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). Here, Plaintiff's equal protection claim is wholly conclusory and does not contain any facts which would state such a claim. *See Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986) (stating that "some factual basis for the claims under § 1983 must be set forth in the pleadings" and "mere conclusory allegations of unconstitutional conduct" are insufficient). Plaintiff fails to state an equal protection violation claim, and this claim will be dismissed.

### 2. *Harassment and humiliation*

Plaintiff alleges that Defendants Walker and Fowler harassed him on January 27, 2016, while he was suffering from "stroke-like" high blood pressure levels. Apparently, this took the form of verbal harassment and "taunting."

Although reprehensible and not condoned, verbal abuse, harassment, and threats are insufficient to state a constitutional violation under § 1983. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *see also Montgomery v. Conner*, No. 5:13CV-P166-R, 2013 WL 6222990, at *1 (W.D. Ky. Nov. 27, 2013) (finding that plaintiff's allegations regarding comments made to him by prison guards were only verbal abuse that did not rise to the level of a constitutional violation); *Searcy v. Gardner*, No. 3:07-0361, 2008 WL 400424, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials."). Consequently, the Court will dismiss this claim for failure to state a claim.

### 3. *Deliberate indifference to safety*

Plaintiff alleges that on January 27, 2016, Defendants Fowler, Walker, and Kliner failed to take him into isolation before making Plaintiff tell them which inmate made threats on his life. The Court therefore considers this claim to be a constitutional claim for deliberate indifference to his safety.

Plaintiff does not allege that he suffered any physical injury from any other inmates. Under the Eighth Amendment, "[p]rison officials have an affirmative duty to protect inmates from violence perpetrated by other prisoners." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998). "Nevertheless, not all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." *Id.* The Sixth Circuit has held that an Eighth Amendment claim for monetary damages requires an inmate to plead and prove that he suffered some non-*de minimis* physical injury. *Id.* at 600-01 (finding that complaint failed to state an Eighth Amendment claim where "plaintiff primarily request[ed] monetary relief . . . in the form of compensatory and punitive damages" but complaint contained no allegations that inmates who threatened the plaintiff "actually injured him physically"); *Wells v. Jefferson Cty. Sheriff Dep't*, 159 F. Supp. 2d 1002, 1010 (S.D. Ohio 2001) (finding failure-to-protect claim failed because plaintiff did not plead that he suffered any physical injury); *Bristow v. Eleby*, No. 2:08-cv-0250, 2008 WL 3414132, at *3 (S.D. Ohio Aug. 8, 2008) (holding, where plaintiff-inmate had "not alleged that he suffered an actual assault by [another] inmate . . . or any other member of the Aryan Brotherhood as a result of defendant [officer's] failure to protect him," that the complaint failed to state a claim for monetary damages against the defendant-officer). Therefore, Plaintiff's claims for monetary damages in connection with his failure-to-protect claims will be dismissed for failure to state a claim upon which relief may be granted.

Additionally, his claim for injunctive relief must also be dismissed. Any requests for injunctive relief related to TCDC are moot because Plaintifff is no longer incarcerated at TCDC. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

### 4. Retaliation

Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

Although Plaintiff's complaint mentions "retaliation," it is not clear for what Plaintiff is alleging he suffered retaliation. Plaintiff does not identify what protected conduct he engaged in, what adverse action was taken against him, or that any adverse action was motivated by the protected conduct. As such, Plaintiff fails to state a claim for retaliation.

### 5. Claims related to grievances

Although Plaintiff complains that grievances he filed were not answered, such a complaint does not give rise to a claim under § 1983. Plaintiff has no right to an effective grievance procedure. *Ishaaq v. Compton*, 900 F. Supp. 935, 940-41 (W.D. Tenn. 1995); *Flowers v. Tate*, Nos. 90-3742, 90-3796, 1991 WL 22009 (6th Cir. Feb. 22, 1991). If a prison provides a grievance process, violations of its procedures do not rise to the level of a federal constitutional right. *Martin v. Crall*, No. 3:05 CV P399 H, 2006 WL 515530, at *8 (W.D. Ky. Feb. 27, 2006); *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986); *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Therefore, this claim will be dismissed.

>  6. *Eighth Amendment claim regarding serious medical needs*

Plaintiff alleges that about 8:00 pm on January 27, 2016, while suffering from high blood pressure, he complained of chest pains, at which time Defendant Fowler "wrote down false blood pressure results she took." However, the next day when the nurse arrived at 7:00 am, Plaintiff was sent to the hospital, where he was treated for his high blood pressure.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "The Court will assume, for purposes of this [initial screening], that Plaintiff's high blood pressure constituted a serious medical need." *Johnson v. Corizon Health, Inc.*, No. 14-1306-JDT-EGB, 2015 WL 542031, at *8 (W.D. Tenn. Feb. 10, 2015).

In order for a claim to rise to the level of an Eighth Amendment violation, a prison official must know of and disregard an excessive risk to inmate; in other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Therefore, to prove a prison official is liable under the Eighth Amendment, the Plaintiff must also demonstrate that the prison official subjectively possessed "'a sufficiently culpable state of mind in denying medical care.'" *Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834).

The Court will allow Plaintiff's Eighth Amendment claim relating to his lack of treatment for his blood pressure for 13 hours and the falsification of his blood pressure reading to go forward against Defendant Fowler. However, only the individual-capacity claim and not the official-capacity claim may go forward.

The official-capacity claim against Defendant Fowler is really brought against her employer, Todd County. When a § 1983 claim is made against a municipality, like Todd County, a court must analyze not only whether the plaintiff's harm was caused by a constitutional violation, but also whether the municipality is responsible for that violation. *Collins v. City of Harker Heights*, *Tex.*, 503 U.S. 115, 120 (1992).

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds*, *Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under

14

§ 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct"). Plaintiff has not identified a policy or custom of Todd County that resulted in a violation of his Eighth Amendment rights related to the alleged lack of treatment for his blood pressure or Defendant Fowler allegedly falsifying his blood pressure reading. Therefore, the official-capacity claim against Defendant Fowler must be dismissed.

### H. Claims against Deputy Wakeman

Plaintiff also makes several claims against Deputy Wakeman, who is not named as a Defendant. However, there is no need to allow Plaintiff to amend his complaint to name Deputy Wakeman because all of Plaintiff's claims relating to this Deputy fail to state a claim for which relief may be granted.

Plaintiff alleges that on one occasion Deputy Wakeman "rush[ed]" Plaintiff's meal and interrupted Plaintiff's prayer, and then told Plaintiff that if Plaintiff signed "another document" at TCDC "he would make sure I got 'f**ked up.'" According to the complaint, Plaintiff became upset and fearful and his "blood pressure immediately rose to 230/190." Plaintiff was again taken to the hospital and then transferred to the medical center. Plaintiff further alleges that on February 6, 2016, Deputy Wakeman exacerbated Plaintiff's condition "by insisting that Plaintiff be secured to bed by hand and foot, not just foot." According to the complaint, a hospital nurse told Deputy Wakeman that it was not necessary, but Deputy Wakeman "was insistent and petulant about ignoring the request of the medical professional until she got a doctor to tell her to put in Plaintiff's medical orders to not secure Plaintiff by arm as it will only worsen his condition."

Plaintiff's allegation of a single incident of having his meal rushed (even if it meant he missed a meal, which Plaintiff does not allege) and his prayer interrupted does not state a claim under § 1983. *See, e.g.*, *Marr v. Case*, No. 1:07-cv-823, 2008 WL 191326, at *3 (W.D. Mich. Jan.18, 2008) (missing a single meal does not rise to the level of a constitutional violation); *Cancel v. Mazzuca*, 205 F. Supp. 2d 128, 142 (S.D.N.Y. 2002) (finding that an "isolated denial, such as having to miss a single religious service, does not constitute a substantial burden on a prisoner's right to practice his religion"). As already discussed, threats do not state a constitutional violation. *See Ivey*, 832 F.2d at 955. Finally, although Plaintiff alleges that Deputy Wakeman insisted that Plaintiff be secured by hand and foot to the bed, medical professionals overrode Deputy Wakeman, and Plaintiff continued to be secured only by his foot. As such, no constitutional violation occurred.

### III. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's claims related to human trafficking, obstruction of justice, the Open Records Act, the ADA, equal protection, harassment and humiliation, deliberate indifference to safety, retaliation, and grievances are **DISMISSED** for failure to state a claim.

The Clerk of Court is **DIRECTED** to terminate the following Defendants as parties to this action: the Todd County Detention Center, the Kentucky Department of Corrections, Greg Allen, Sgt. Betsy Walker, and Deputy Kliner.

The Court will enter a separate Scheduling Order to govern the development of the remaining claim, *i.e.*, Plaintiff's Eighth Amendment claim relating to his lack of treatment for his blood pressure for 13 hours and the falsification of his blood pressure reading against Defendant

Fowler in her individual capacity. In allowing this claim to go forward, the Court passes no judgment on the ultimate merit of this claim.

Date: September 29, 2016

                                                        **Greg N. Stivers, Judge**
                                                        **United States District Court**

cc:     Plaintiff, *pro se*
       Defendants
       Todd County Attorney
4416.009